## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HAKAN YALINCAK, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| NEW YORK UNIVERSITY, | : | |
| JOHN SEXTON, | : | Civil No. 3:08cv773 (PCD) |
| RICHARD J. KALB, | : | |
| DEBRA LAMORTE, | : | |
| NANCY KILSON, and | : | |
| ADA MELOY, | : | |
| Defendants. | : | |

## RULING ON MOTION TO DISMISS AND MOTIONS TO AMEND

Defendants New York University ("NYU"), John Sexton, Richard J. Kalb, Debra LaMorte, Nancy Kilson and Ada Meloy[1] (collectively, "Defendants") move pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6) and 12(f) to dismiss *pro se* Plaintiff Hakan Yalincak's First Amended Complaint ("Am. Compl."). Plaintiff filed an opposition to the motion to dismiss, and also filed two identical motions pursuant to Federal Rule of Civil Procedure 15 to file a Second Amended Complaint. For the reasons stated herein, Defendants' Motion to Dismiss [Doc. No. 36] is GRANTED. Plaintiff's Motions to Amend the Complaint for a second time [Doc. Nos. 44 & 53] are DENIED.

## I.    Factual Background

Plaintiff alleges that he attended NYU as an undergraduate student from fall 2000 to spring 2005. (Am. Compl. ¶ 5) As Plaintiff explains, "The requirements to obtain a [College of

---

[1] Plaintiff alleges that the individual Defendants' titles at NYU are as follows: John Sexton, President; Richard J. Kalb, Associate Dean for Students at the College of Arts and Science ("CAS"); Debra LaMorte, Senior Vice President of Development and Alumni Relations; Nancy Kilson, Associate General Counsel; and Ada Meloy, Acting General Counsel until December, 2006. (Am. Compl. ¶¶ 7-11)

Arts and Science] degree were, in part, to successfully complete the 128 Earned Hour Credits ("EHRS") with a cumulative [Grade Point Average] of at least 2.0."  (Am. Compl. ¶ 18, citing CAS Bulletin, Pl.'s Ex. A, p. 350)

In Spring 2003, Plaintiff took a four credit course entitled Principles of Biology II, for which he received an Incomplete after he missed the final examination.  (Am. Compl. ¶ 28) Plaintiff alleges that he was entitled to take a make-up exam, but that the Teaching Assistant ("TA") forgot to notify him of the date, and therefore he missed the make-up test as well.  (Am. Compl. ¶¶ 29-30)  Plaintiff states that the TA thereafter represented to him that she had consulted with the professor, who allegedly had decided to give Plaintiff a B- in the course without requiring Plaintiff to take the final exam.  (Am. Compl. ¶ 31)

In Fall 2004, Plaintiff took a four credit course entitled Algebra and Calculus with Application to Business and Economics, for which he received an Incomplete after missing the final examination.  (Am. Compl. ¶ 36)  The professor allegedly represented to Plaintiff in Spring 2005 that he would give Plaintiff a B in the course without requiring Plaintiff to take a make-up exam.  (Am. Compl. ¶¶ 37-38)

Plaintiff contends that these representations with respect to his grades in the two classes were made to him via email, and his First Amended Complaint even contains what appear to be quotes from the emails (See e.g. Am. Compl. ¶ 38), which suggests that the emails are in Plaintiff's possession, but notwithstanding Plaintiff's attachment of twenty-one exhibits to the complaint[2], these emails are not among them.  Despite these purported promises, Plaintiff's

---

[2] Plaintiff manually filed Exhibits A-U in conjunction with his original Complaint. [Doc. No. 12]  While he did not re-file these exhibits with the First Amended Complaint or the Proposed Second Amended Complaint, both cite the exhibits extensively and thus Plaintiff

grades of Incomplete were never changed to a B- and a B, nor does he allege that the professors ever informed NYU of their intent to have the grades changed. Pursuant to NYU's academic policy, "if a grade is not submitted by the professor during the following semester, the Incomplete grade lapses to an F grade." (May 4, 2006 Dean Kalb letter, Pl.'s Ex. G, citing CAS Bulletin, p. 238) Therefore, the Incompletes eventually became grades of F in both classes, and are so recorded on Plaintiff's transcript. (Pl.'s Ex. B)

During his time at NYU, Yalincak arranged to make a large donation to the university. The Omer Bulent Yalincak and Ayferafet Family Foundation (the "Foundation") and NYU entered into two Gift Agreements dated July 2, 2004 and September 24, 2004 (the "Gift Agreements") pursuant to which the Foundation agreed to provide NYU with certain cash gifts. (Pl.'s Ex. L[3], ¶ A) The Gift Agreements were executed on behalf of the Foundation by Plaintiff. Id. On September 29, 2004, the Foundation, appearing to act in furtherance of its obligations under the Gift Agreements, delivered to NYU a check signed by Plaintiff for $1,250,000.00 (the "September 29 Transfer"). (Pl.'s Ex. L, ¶ B) However, these funds had been raised and collected from investors and deposited into an account maintained by a third party on behalf of Daedalus Capital Relative Value Fund I, LLC ("Daedalus"). (Pl.'s Ex. L, ¶ F) Therefore, the Bankruptcy Court ordered on April 17, 2007 that NYU return the $1,250,000.00 to the estate of Daedalus, minus the $199,092.62 in costs and disbursements relating to the gift that had been expended by

---

clearly intended to incorporate the previously filed exhibits. Plaintiff makes this intent explicit in a footnote to his opposition to the motion to dismiss. [See Doc. No. 45, FN 5]

[3] Stipulated Order Regarding Turnover of Funds, April 17, 2007, Case No. 05-13790 (PCB), United States Bankruptcy Court, Southern District of New York, Judge Prudence Carter Beatty (the "Stipulated Order").

NYU in reasonable reliance on the Gift Agreements and the September 29 Transfer, which NYU

"represented that it did not know and did not have reason to suspect . . . involved fraud, was

avoidable, or constituted a transfer of property of [Daedalus]." (Pl.'s Ex. L, ¶¶ F, H, N, 4)

According to the Stipulated Order, upon making the repayment, NYU and "its trustees, officers,

directors, employees, representatives and agents . . . [were] deemed released and discharged from

any and all claims and liabilities, of any kind or nature, that any natural or legal person or other

entity . . . has, had or may hereafter have, from the beginning of the world to the date of entry of

this Order, arising from or in any way relating to the Gift Agreements, [NYU]'s obligations, if

any, under the Gift Agreements and/or the September 29 Transfer" (the "Release Clause"). (Pl.'s

Ex. L, ¶ 7)

      Plaintiff was federally prosecuted for his involvement in the Gift Agreements and the

September 29 Transfer. "On May 6, 2005, the Plaintiff was arrested in connection with a federal

indictment." (Am. Compl. ¶ 74) "On or about June 6, 2006, the Plaintiff entered into a Plea

Agreement." (Am. Compl. ¶ 86) According to newspaper articles attached by Plaintiff as

exhibits to the complaint, Plaintiff was indicted on charges of bank and wire fraud and pled

guilty. (Pl.'s Ex. R) In response to inquiries from Plaintiff regarding the status of his NYU

undergraduate degree, Plaintiff received a letter from Defendant Dean Kalb on May 4, 2006,

stating, "Overall, you have completed 120 of the 128 credits required for the undergraduate

degree. This means that you are basically 8 credits (two CAS courses) short of completing the

degree . . . In order to complete the remaining 8 elective credits, you will need to register for

them in the College and fulfill our residency requirement." (Am. Compl. ¶ 84, citing Pl.'s Ex. G)

Plaintiff contends that he is entitled to the degree, because he should have received credit in the

two classes which he failed.  Alternatively, Plaintiff contends that Defendants have unreasonably

prevented him from completing the requirements for the degree notwithstanding his

incarceration.

Plaintiff has filed an eleven count first amended complaint.  The first three counts seek

declaratory relief with respect to what Plaintiff terms the Degree Dispute, the Administrative

Process and Policy Controversy, and the Bursar Dispute.  The Amended Complaint also asserts

Breach of Agreement/Implied Contract (Count Four), Promissory Estoppel (Count Five),

Tortious Interference with a Contract (Count Six), Breach of the Duty of Good Faith and Fair

Dealing (Count Seven), Quantum Meruit/Unjust Enrichment (Count Eight), Common Law Fraud

(Count Nine), Violations of N.Y.G.B.L. § 349 (Count Ten), or in the alternative, Violations of

the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*

(Count Eleven).

## II.    Procedural History

On May 20, 2008, Plaintiff filed the Complaint. [Doc. No. 3]  On August 21, 2008,

Defendants filed a Motion to Dismiss the Complaint. [Doc. No. 24]  On August 22, 2008,

Plaintiff filed a First Amended Complaint. [Doc. No. 25]  On October 10, 2008, Defendants filed

the instant Motion to Dismiss the First Amended Complaint [Doc. No. 36], whereupon the prior

Motion to Dismiss the Complaint was denied as moot. [Doc. No. 41]  On December 15, 2008,

Plaintiff opposed the Motion to Dismiss the Amended Complaint. [Doc. No. 45]  Also on

December 15, 2008, and again on January 12, 2009, Plaintiff filed a Motion to File a Second

Amended Complaint. [Doc. Nos. 44 & 53]  The two Motions to Amend, the Memoranda in

Support, and the attached Proposed Second Amended Complaints are identical, and are all dated

December 8, 2008, so it is not clear why they were filed twice.

### III.    Motions to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that after a responsive pleading

has been filed, "a party may amend its pleading only with the opposing party's written consent or

the court's leave." FED. R. CIV. P. 15(a)(2). A "court should freely give leave [to amend] when

justice so requires." Id.  "Leave to amend, though liberally granted, may properly be denied for:

'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514

F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "Despite the

lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to

amend the pleadings after the deadline set in the scheduling order when the moving party has

failed to establish good cause and that good cause depends on the diligence of the moving party."

Lyddy v. Bridgeport Bd. of Educ., 2008 WL 5117679, at *1 (D. Conn. Dec. 4, 2008) (quoting

Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)).

Pursuant to the Order on Pretrial Deadlines issued May 20, 2008, amended pleadings

were due July 19, 2008. [Doc. No. 5]  Plaintiff did not file the First Amended Complaint until

August 22, 2008, meaning that Plaintiff has already been permitted one untimely amendment,

and Plaintiff did not file the instant motions to amend until December 15, 2008 and January 12,

2009.  Defendants had already filed a Motion to Dismiss the Complaint when Plaintiff filed the

First Amended Complaint, and Defendants had to revise and re-file their motion to dismiss in

light of the First Amended Complaint.  After numerous extensions of time and lengthy briefing

6

on Defendants' Motion to Dismiss the First Amended Complaint, permitting Plaintiff to again amend the complaint would likely require additional briefing on a revised motion to dismiss, resulting in additional delay.

Plaintiff's motions to file a second amended complaint are denied as untimely and as prejudicial to Defendants, particularly in light of the fact that this would be a second amendment and that Plaintiff's first amendment was itself untimely.  Plaintiff has failed to establish good cause for seeking to amend the complaint five months after the deadline set in the scheduling order.  The mere fact that Plaintiff is incarcerated and *pro se* is insufficient to establish good cause.  Nor has Plaintiff offered a reason for his failure to cure any deficiencies in the complaint in the amendment previously allowed.  Plaintiff has on two occasions filed a motion to amend in response to Defendants' motions to dismiss, which could be viewed as an attempt to delay the resolution of that motion.

The futility of Plaintiff's proposed amendments provides another ground upon which Plaintiff's motions to file a second amended complaint are denied.  See New Colt Holding Co. v. RJG Holdings of Fla., Inc., 2022 U.S. Dist. LEXIS 26780 at *5 ("[A] plaintiff need not be granted leave to add an apparently futile claim").  Plaintiff explains that he seeks to file a Second Amended Complaint in order "to correct grammatical errors, voluntarily dismiss the Sixth Claim for Relief (Tortious Interference With a Contract) and replace it with Tortious Interference With A Prospective Business Relationship." [Doc. No. 44 at 1] The correction of grammatical errors would not influence the outcome of the Motion to Dismiss.  A review of the two complaints suggests that the differences between them appear to be far more extensive than Plaintiff's characterization of the changes would suggest.  Nonetheless, in the absence of any ready means

7

of performing a line by line comparison of the 77 page, 297 paragraph First Amended Complaint with the 65 page, 254 paragraph Proposed Second Amended Complaint, the Court will accept Plaintiff's representation that the only substantive difference between the two complaints is the substitution of the Tortious Interference with a Prospective Business Relationship claim for the Tortious Interference with a Contract claim. However, because the Tortious Interference with a Prospective Business Relationship claim would not survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the amendment of the complaint to include this claim would be futile.

A district court may deny a party's request for leave to amend its complaint if an amendment would be futile. Foman, 371 U.S. at 182. An amendment is futile if it would fail to survive a motion to dismiss brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); see also In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 392-93 (S.D.N.Y. 2003). Accordingly, the court may deny a proposed amendment if it fails to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Plaintiff contends that Defendant NYU has interfered with his prospective business relationships with the University of Connecticut ("UCONN") and with Yuksek Oretim Kurimu ("YOK"), which Plaintiff explains is "the Republic of Turkey's equivalent of the United States Department of Education." (Proposed Second Am. Compl. ¶ 146.) Plaintiff alleges that in 2007, he sought to transfer to UCONN and NYU failed to forward his transcript to UCONN until "well after the window for Plaintiff to transfer had passed." (Id. ¶ 141) Plaintiff also alleges that in

2008, he sought to transfer to YOK and that "NYU received notification from YOK requesting verification and/or authentication of the Plaintiff's transcripts. The NYU acknowledged the Plaintiff was a student and had completed the coursework; however, [NYU] would not provide an original transcript per YOK's request." (Id. ¶ 147)

"To plead tortious interference with a prospective business relationship, plaintiffs must allege (1) a prospective business relationship with a third party, (2) [defendant's] interference with that relationship, (3) [defendant's] singular intent to harm plaintiff or its use of dishonest, unfair, or improper means, and (4) ensuing injury to the relationship." Wolff v. Rare Medium, 65 Fed. Appx. 736, 739 (2d Cir. 2003) (citing Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994)). "[I]t is well-settled that a plaintiff can recover if that plaintiff can prove that the defendant tortuously interfered with 'a continuing business or other customary relationship not amounting to a formal contract.'" Mahmud v. Kaufmann, 454 F. Supp. 2d 150, 162 (S.D.N.Y. 2006) (quoting Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998)). Plaintiff's mere application for admission to other universities clearly does not amount to such a relationship. "To claim tortious interference with a prospective business relationship . . . a plaintiff must specify some particular, existing relationship through which plaintiff would have done business but for the allegedly tortious behavior." Id. (quoting Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-09 (2d Cir. 1997)); see also Kramer v. Pollock-Krasner Found., 890 F.Supp. 250, 258 (S.D.N.Y. 1995). Here, Plaintiff did not have a particular, existing relationship with the universities to which he applied to transfer, nor can he allege that he would necessarily have done business with those schools but for NYU's allegedly tortious behavior, because that assumes that he would have been admitted and attended. Furthermore, "the defendants must interfere with the

9

business relationship directly; that is, the defendant must direct some activities toward the party and convince the third party not to enter into the business relationship with plaintiff." Id. (quoting Allcar Motor Parts Corp. v. Federal-Mogul Corp., 1998 U.S. Dist. LEXIS 15164, 1998 WL 671448, at *5 (S.D.N.Y. Sept. 29, 1998)). Plaintiff lacked the requisite relationship with UCONN and YOK, and NYU's alleged failure to timely provide Plaintiff's transcript to these universities does not rise to the level of tortiously directing activities toward third parties with the intent to convince those third parties not to enter a business relationship with Plaintiff. The futility of Plaintiff's proposed amendment provides another reason, in addition to the several others discussed above, to deny Plaintiff's motion to file a Second Amended Complaint.

## IV.    Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant. Johnsen, Fretty & Co. v. Lands South, LLC, 526 F.Supp.2d 307, 310 (D. Conn. 2007). However, the plaintiff is required only to make a *prima facie* showing that personal jurisdiction exists because the parties have not conducted jurisdictional discovery and the Court has not held an evidentiary hearing. Gerber Trade Fin., Inc. v. Davis, Sita & Co., P.A., 128 F.Supp.2d 86, 89 (D. Conn. 2001). The issue of personal jurisdiction is resolved based on the parties' pleadings, affidavits, and supporting materials "construed in the light most favorable to the plaintiff and with all doubts resolved in the plaintiff's favor." Id. When the proceedings are in their beginning stages, the plaintiff's *prima facie* burden is satisfied by good faith allegations in the pleadings. Id. at 90. Plaintiff must eventually prove the jurisdictional facts by a preponderance of the evidence at an evidentiary hearing or trial. Id.

10

To resolve whether the defendant is subject to personal jurisdiction in diversity cases, a federal court must apply the law of the forum state in which it sits. Id. Connecticut law mandates that to determine whether a court has personal jurisdiction over a foreign defendant, the court must first decide whether it has jurisdiction under Connecticut's applicable long-arm statute, which in this instance is Conn. Gen. Stat. § 33-1219 with respect to NYU and Conn. Gen. Stat. § 52-59b with respect to the individual Defendants. The court must next consider whether exercising personal jurisdiction over the defendants comports with constitutional due process, an inquiry which focuses on the totality of the circumstances rather than relying on any mechanical criteria. Combustion Eng'g, Inc. v. NEI Int'l Combustion, Ltd., 798 F.Supp. 100, 105 (D. Conn. 1992). The foreign defendant's action must establish "certain minimum contacts . . . [so] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). The defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958), "such that [the defendant] should reasonably anticipate being haled into court there." Id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Plaintiff alleges that the Defendants have repeatedly contacted "Plaintiff and his family via e-mail, telephone, and correspondence in the State of Connecticut" during the pendency of the events at issue in this lawsuit. (Am. Compl. ¶ 124) Plaintiff further contends that he is a resident of Connecticut, because he lived in Connecticut prior to attending NYU and has continued to consider Connecticut to be his state of permanent residence throughout his tenure as

11

a student at NYU and during his subsequent incarceration.  Plaintiff alleges that he was actively

recruited in Connecticut by NYU, and that "an NYU student and numerous alumni telephoned

the Plaintiff in Connecticut, and met with him in Connecticut" in an effort to solicit his

attendance at the university.  (Am. Compl. ¶ 15)  The Gift Agreements and the September 29

Transfer were negotiated at least partially in Connecticut. (Am. Comp. ¶ 66)  As the result of

criminal charges against Plaintiff arising from his involvement in the Gift Agreements, Plaintiff

"entered into a Plea Agreement with the United States Attorney's Office for the District of

Connecticut."  (Am. Compl. ¶ 86)  One theme of Plaintiff's allegations is that NYU has

improperly withheld Plaintiff's degree in retaliation for Plaintiff's fraudulent gift to the

university, making the Gift Agreements somewhat relevant to this lawsuit, which otherwise

primarily relates to Plaintiff's academic disputes with NYU.  Plaintiff asserts that he did not have

a "normal college student relationship" (Opp. Mot. Dismiss at 4) with NYU and its agents, but

instead had a personal relationship with the individual Defendants that included interactions in

Connecticut regarding, *inter alia*, the Gift Agreements.

  While Defendants contest many of these purported facts, Plaintiff has by a narrow margin

sufficiently alleged a basis for personal jurisdiction over Defendants, particularly in light of

Plaintiff's relatively minimal burden with respect to jurisdictional pleading at this phase, and in

light of the deference typically afforded Plaintiff's choice of forum.  See Johnsen, 526 F.Supp.2d

at 314 (Once minimum contacts have been established, Defendant "must present a compelling

case that the presence of some other considerations would render jurisdiction unreasonable . . .

Plaintiff's choice of forum is entitled to substantial consideration . . . [and] unless the balance is

strongly in favor of defendant, the plaintiff's choice of forum should rarely be disturbed.").  The

Court concludes that the relevant long arm statutes are satisfied, and that it does not violate due process to require Defendants to defend themselves in Connecticut.

**V.    Motion to Dismiss for Failure to State a Claim**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). In ruling on a motion under Rule 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp, 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under Rule 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." Twombly, 550 U.S. at 555.

13

## A.    Choice of Law

The parties concur that New York law governs Counts One through Four, which are Plaintiff's requests for declaratory judgment and his breach of contract claim.  (Mem. Opp. Mot. Dismiss First Am. Compl. at 27.)  Plaintiff maintains that Connecticut law applies to Counts Five through Nine and Eleven.  Id.  Defendants assert that New York law controls all counts.  (Mem. Supp. Defs.' Mot. Dismiss First Am. Compl. at 16.)

A federal court sitting in diversity generally follows the substantive law of the state in which it sits, including the choice of law rules.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  "Traditionally, Connecticut has followed the 'vested rights' approach to choice of law problems, holding that 'in contract actions the laws of the place of contracting governs substantive issues, . . .  and in tort actions the law of the place of injury governs substantive issues.'"  Economu v. Borg-Warner Corp., 652 F. Supp. 1242, 1247 (D. Conn. 1987) (citing Schirm v. Auclair, 597 F. Supp. 202, 205 (D. Conn. 1984)).  However, where such an analysis "would produce arbitrary, irrational results," the approach set forth in the Restatement (Second) Conflict of Laws will be applied.  See id. (citing O'Connor v. O'Connor, 201 Conn. 632, 650, 519 A.2d 13, 22 (1986) (internal quotation marks omitted)).

Factors considered in a choice of law analysis are 1) interstate needs; 2) relevant policies of the forum; 3) relevant policies and relative interests of other interested states; 4) protection of justified expectations; 5) underlying policies of the particular legal field; 6) certainty, predictability, and uniformity of result; and 7) ease in determination and application of the law to be applied.  See Restatement (Second) of Conflicts § 6(2) (1971).  Where parties have provided no effective choice of law, contacts considered are: 1) place of contracting; 2) place of contract

14

negotiation; 3) place of performance; 4) location and subject matter of the contract; and 5) domicile, residence, nationality, place of incorporation, and place of business of the parties.  See Restatement (Second) of Conflicts § 188(2); see also Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co., 243 Conn. 401, 414, 703 A.2d 1132, 1138 (1997).

New York law governs the instant case.  In support of his assertion that Connecticut law applies, Plaintiff submits only that the fraud, unjust enrichment, tortious interference, and CUTPA claims "all accrued in the State of Connecticut."  (Mem. Opp. Mot. Dismiss First Am. Compl. at 28.)  However, all of the educational services that Plaintiff received took place in New York, and Plaintiff suffered his alleged injuries in New York.  These facts weigh in favor of protecting the justified expectations of the parties that controversies between them would be subject to New York law.  Applying New York law increases certainty, predictability and uniformity of result; otherwise, NYU would be forced to resolve academic disputes in accordance with the laws of every state from which it attracts students, meaning that NYU would likely be subject to the laws of nearly every state.  Nor are there any policy considerations dictating that this academic dispute, which arose in New York, be resolved pursuant to Connecticut law.  A Connecticut Superior Court has applied the laws of the state in which a university is located to a dispute between a student of a different state and the university.  See Mayer v. Fort Hays State Univ., No. CV044001135, 2005 WL 1757453, at *2 (Conn. Super. 2005) (finding Kansas law governed because student studied and lived in Kansas for his degree). In view of the foregoing, New York law governs this case.

**B.    Declaratory Relief (Counts One through Three)**

The first three counts seek declaratory relief with respect to what Plaintiff terms the

Degree Dispute, the Administrative Process and Policy Controversy, and the Bursar Dispute.

Plaintiff alleges that "[t]here exists an implied contract between the Plaintiff and the NYU, where

upon completion of the requisite 128 credits, the Plaintiff was to be awarded his degree in

Bachelor of Arts in History from the College of Arts and Science." (Pl.'s First Am. Compl. ¶¶

227, 234.) Plaintiff seeks an order of the Court directing NYU to award him a Bachelor of Arts

degree, or in the alternative, that Plaintiff be "re-admitted to take any two courses in accordance

with NYU procedure." (Id. ¶ 232.) In Count Two, Plaintiff seeks a declaratory order directing

Defendants to provide him a forum to demonstrate his completion of the required 128 credits.

(Id. ¶ 143) Plaintiff asks in Count Three for the Court to order that Plaintiff be allowed to

address his alleged controversy regarding payment of outstanding tuition and fees with the Bursar

or other NYU office. (Id. ¶ 247.)

Defendants argue that Counts One, Two, and Three should have been brought in state

court pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). (Defs.'

Mot. Dismiss First Am. Compl. at 18.) Further, Defendants contend that an Article 78

proceeding has a four month statute of limitations and that Plaintiff's claim comes well late of

this limitation. (Id. at 19.)

The Court of Appeals of New York has held that an Article 78 proceeding, rather than a

plenary action, is appropriate for judicial review of controversies involving colleges and

universities. Maas v. Cornell Univ., 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716 (1999). Article 78

proceedings "are typically the avenue for parties challenging administrative actions by

governmental agencies or by the decisionmaking bodies of private entities." Gally v. Columbia

Univ., 22 F. Supp. 2d 199, 205 (S.D.N.Y. 1998) (quoting Clarke v. Trustees of Columbia Univ.,

No. 97 Civ. 0193, 1998 WL 19989, at *20 (S.D.N.Y. Oct. 23, 1996)).  The important inquiry in determining whether an Article 78 proceeding should be brought is whether "the court [or] a jury would be required to review any educational decisions of the sort which should be left to educators."  Ansari v. New York Univ., No. 96 CIV. 5280(MBM), 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997).  Essentially, if the issue is whether specified services, such as a designated number of hours of instruction, Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ., No. 04 Civ. 704(RPP), 2005 WL 1214281, at *10 (S.D.N.Y. May 20, 2005), were provided to a party, and no review of any discretionary actions is required, a breach of contract claim is appropriate.  Ansari, 1997 WL 257473, at *3.  If, by contrast, an analysis of the quality of instruction or another discretionary decision is required, then an Article 78 proceeding is appropriate.  Id.  Academic decisions that have been reviewed in Article 78 proceedings include grading disputes, dismissals, expulsions, suspensions, and decisions regarding whether a student has fulfilled the requirements for graduation.  Id. at *2.  "Simply put, the courts should refrain from becoming overseers of the learning process."  Paladino v. Adelphi Univ., 89 A.D.2d 85, 91, 454 N.Y.S.2d 868 (App. Div. 1982).

Plaintiff should have brought his requests for declaratory relief pursuant to Article 78.  Plaintiff requests that this Court overrule NYU's decision to adhere to its academic rules, regulations, and procedures, as set forth in its academic bulletin, and require NYU to make a special exception for Plaintiff.  Such a review of an educator's exercise of discretion is best left to those educational professionals who oversee the daily implementation of such policies.  See Ansari, 1997 WL 257473, at *3.  Judicial restraint is proper in such cases and this Court will observe its "restricted role in dealing with and reviewing controversies involving colleges and

17

universities." <u>Maas</u>, 94 N.Y.2d at 92.  Accordingly, an Article 78 proceeding would have been the proper avenue for Plaintiff's complaints, but it is now time-barred by the four-month statute of limitation that applies to such proceedings.

Notwithstanding that Plaintiff should have instead filed an Article 78 proceeding, his requests for declaratory relief as brought in this case fail to state a claim.  Plaintiff seeks in Count One for this Court to compel NYU to award him a Bachelor of Arts degree.  The Court will not so significantly intrude on the discretion of educators absent extraordinary circumstances.  <u>See</u> <u>Olsson v. Board of Higher Education</u>, 49 N.Y.2d 408, 416 (N.Y. 1980) ("[I]t must be stressed that the judicial awarding of an academic diploma is an extreme remedy which should be reserved for the most egregious of circumstances.")  Plaintiff fails to demonstrate such egregious circumstances.  He acknowledges that only 120 credits of the 128 credits required to graduate are on his transcript, and he makes no plausible claim that he complied with the procedures for receiving a degree as outlined in NYU's bulletins.  <u>See</u> <u>Gally</u>, 22 F. Supp. 2d at 206 ("[T]he student must fulfill her end of the bargain by satisfying the university's academic requirements and complying with its procedures if she hopes to receive her degree.") In the alternative, Plaintiff requests that the Court mandate his re-admittance to NYU in order to permit him to complete the degree requirements.  NYU's Bulletin for the College of Arts and Sciences provides that "[a]ny former student who has been out of attendance for more than two consecutive terms and who wishes to return to the College must apply for readmission."  (Pl.'s Ex. A at A3-38.)  Accordingly, Plaintiff must reapply for admission if he wishes to be readmitted to the school, and the decision of whether to re-admit him will be made at NYU's discretion.

In the Second Count, Plaintiff seeks a declaratory order directing Defendants to provide

18

him a forum to demonstrate his completion of the required 128 credits.  (Pl.'s First Am. Compl. ¶ 143, 234-239.)  Defendants contend that Plaintiff has failed to avail himself of the established procedure for contesting grades, but that Plaintiff has instead elected to repeatedly contact individual Defendants directly to make his arguments with respect to his grades.  For the court to issue the order Plaintiff seeks would constitute an unjustifiable intrusion into NYU's implementation of its own policies.  See Gally, 22 F. Supp. 2d at 207 (quoting Olsson, 49 N.Y.2d at 413) ("The decision as to whether a student has complied with [academic] standards and procedures is best 'left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis.'").

In the Third Count, Plaintiff requests that the Court order Defendants to provide him with his bursar statement, allow him a forum to contest portions of his Bursar balance, and accept payment from him in an amount to be determined by the Court.  (Pl.'s First Am. Compl. ¶ 147, 241-247.)  Defendants respond that Plaintiff's claim is not ripe.  The Second Circuit has held that "a dispute [must] generate[] injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution" and a federal court will not "entangl[e] itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur."  United States v. Fell, 360 F.3d 135, 139 (2d Cir. 2004) (quoting Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002)).  Plaintiff submitted a letter on April 14, 2008 to the Bursar inquiring about his balance and any procedures to dispute certain charges.  (Pl.'s Ex. S at S-127.)  Plaintiff received a response from the Bursar's Office on May 8, 2008 noting an enclosure of the statement of fees and the appeal procedure.  (Pl.'s Ex. U at U-135.)  In response to Plaintiff's inquiries,

19

Defendants' counsel also advised Plaintiff on April 23, 2008 that he may forward any payments to NYU's bursar and to the library.  (Pl.'s Ex. S at S-124.)  Plaintiff does not claim that he attempted to follow these instructions.  As such, Plaintiff's claim for declaratory relief is not ripe since Plaintiff has not yet availed himself of the procedures that have been communicated to him, as demonstrated by Plaintiff's own exhibits.

## C.    Breach of Implied Contract (Count Four)

"When a student is admitted to a university, an implied contract arises between the parties which states that if the student complies with the terms prescribed by the university, he will obtain the degree he seeks.  The rights and obligations of the parties, as contained in the university's bulletins, circulars and regulations made available to the student, become a part of this contract."  Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 654-55, 511 N.Y.S.2d 880 (App. Div. 1987); see also Tedeschi v. Wagner Coll., 49 N.Y.2d 652, 660, 427 N.Y.S.2d 760 (1980) (holding that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion, that procedure must be substantially observed").  The Court's role is limited to determining whether the university "abided by their own rules."  Gertler v. Goodgold, 107 A.D.2d 481, 486, 487 N.Y.S.2d 565 (App. Div. 1985) ("[T]he judgment of professional educators is subject to judicial scrutiny to the extent that appropriate inquiry may be made to determine whether they abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational.").

Like Plaintiff's declaratory relief claims, Plaintiff's breach of contract claims ask this Court to review the discretionary decisions of educators and thus should have been brought under Article 78.  Because Article 78 proceedings have a four-month statute of limitations, Plaintiff's

20

claim is untimely.  In any case, Plaintiff has failed to state a viable breach of contract claim.

Plaintiff claims that NYU has breached its implied contract by failing to timely and accurately

record his grades, failing to award Plaintiff his degree, and by refusing Plaintiff access to the

relevant academic committee to present the instant controversy.  (Am. Compl. ¶ 252.)

Defendants respond by asserting that Plaintiff "cannot establish a contractual right to receive a

degree unless he can show that he met all applicable requirements." (Mem. Supp. Defs.' Mot.

Dismiss First Am. Compl. at 22.)

　　　While Plaintiff correctly notes that one "implied obligation of the institution [is] to confer

upon the student the degree he or she seeks upon the student's completion of all of the stated

requirements therefor," Downey v. Schneider, 806 N.Y.S.2d 657, 659 (App. Div. 2005), NYU

has stated in its academic bulletin that "[t]o be eligible for the bachelor's degree, students must

complete 128 points with a cumulative grade point average of at least 2.0" (Pl.'s Ex. A at 46).

Plaintiff attaches a letter from Defendant Associate Dean for Students Richard Kalb informing

Plaintiff that he has completed 120 of the 128 credits required for the undergraduate degree.

(Pl.'s Ex. G.)  Plaintiff's transcript reflects this as well.  (Pl.'s Ex. B)  Plaintiff fails to identify

any provision in NYU's academic bulletin that supports awarding his degree when he is eight

credits short of the requirement.  See In the Matter of Levy, 450 N.Y.S.2d 574, 575-76 (App.

Div. 1982) ("An educational institution is not required to confer a diploma before the student has

demonstrated competence in accordance with the institution's academic standards.")  Plaintiff

admits that he "has earned 120 EHRS of the 128 EHRS credits required to be awarded his

Bachelor of Arts from the CAS at NYU." (Am. Compl. ¶ 126.)  This is not a case where

Plaintiff's transcript reflects his entitlement to a degree, but NYU refuses to reward it to him, in

21

derogation of its contractual obligations.

 Plaintiff's claim that NYU failed to timely and accurately record his grades fails to meet the plausibility standard.  It relies on the far-fetched claim that two of his professors, or their teaching assistants, promised Plaintiff that they would award him a B and a B- in their respective courses without requiring him to take the final examination.  Even if Plaintiff could demonstrate that such promises were made to him, nowhere does Plaintiff claim that the professors timely submitted these alleged grades to NYU, as Dean Kalb has informed Plaintiff is the requirement. (Letter from Dean Kalb, Pl.'s Ex. G, citing CAS Bulletin 2004-2006, Page 238) ("According to [NYU's] academic policy, if a grade is not submitted by the professor during the following semester, the Incomplete grade lapses to an F grade.  This happened in both of these courses.") NYU is not obligated to change a student's grades in reliance on the student's representation with respect to what a professor or TA allegedly told the student the grade would be.

Finally, "since the academic and administrative decisions of educational institutions involve the exercise of subjective professional judgment, public policy compels a restraint which removes such determinations from judicial scrutiny."  Gertler v. Goodgold, 107 A.D.2d 481, 485, 487 N.Y.S.2d 565 (N.Y. App. Div. 1985).  Accordingly, this Court declines to "sit in review of the day-to-day implementation" of NYU's policies and procedures.  Id. at 486 (quoting Donohue v. Copiague Union Free School Dist., 47 N.Y.2d 440, 445 (N.Y. 1979)).

**D.    Promissory Estoppel (Count Five)**

Plaintiff brings a claim for promissory estoppel against NYU, Sexton, Kalb, LaMorte, and Meloy. (Am. Compl. ¶¶ 176-184, 256-263)  Plaintiff claims Defendant LaMorte, Senior Vice President of Development and Alumni Relations, promised on or about September 20, 2005 "that

upon resolution of the intervening events, the NYU would address Plaintiff's academic matters, and that the Plaintiff did not need to apply for a leave of absence or re-apply for admission." (Am. Compl. ¶ 176.)  Plaintiff alleges that during November 2005, Defendant Meloy, then Acting General Counsel of NYU, promised that "NYU would preserve any and all documents relating to the Plaintiff."  (Id. ¶ 178.)  On May 4, 2006, Defendant Dean Kalb allegedly promised that Plaintiff "will be awarded the Bachelor of Arts degree in the College of Arts and Science at New York University."  (Id. ¶ 177, citing Pl.'s Ex. G)  Plaintiff maintains that during early 2007, Associate General Counsel Kilson promised that "Plaintiff would be able to register for two other courses at another university, subject to the NYU's approval at the University, to complete his degree requirements in lieu of addressing the grades dispute."  (Id. ¶ 179.)  Plaintiff further claims that Defendants Sexton, LaMorte, Kilson, and Meloy, as agents of NYU, advised Plaintiff that NYU would honor its promises (Id. ¶ 180), and that Plaintiff relied on these promises by not transferring to another school or pursuing other education opportunities. (Id. ¶ 181.)

Under New York law, the elements of promissory estoppel are: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of reliance.  Washington v. Kellwood Co., 2009 U.S. Dist. LEXIS 32565, 26-27 (S.D.N.Y. Mar. 24, 2009) (citing Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000)).  Plaintiff has failed to plead the existence of a clear and unambiguous promise.  Instead, the alleged statements upon which he relies are on their face conditional and contingent, and therefore Defendants' actions cannot be said to have violated any clear and unambiguous promises that they made.

Specifically, Plaintiff contends that Dean Kalb promised him that he "will be awarded the

Bachelor of Arts degree," but Plaintiff fails to cite the first clause of the sentence containing Kalb's alleged promise of the degree.  In Kalb's letter to Plaintiff dated May 4, 2006, which Plaintiff has attached as an exhibit to his complaint, Dean Kalb states, "*Once you have satisfied all of these requirements*, you will be awarded the Bachelor of Arts degree in the College of Arts and Science at New York University."  (Pl.'s Ex. G) (emphasis added).  Kalb's letter also informed Plaintiff that he needed to register for the eight remaining elective credits and fulfill NYU's residency requirement, which "stipulates that students must be registered in the College for their last 32 credits and specifically during the semester immediately prior to graduation, unless officially approved for a leave of absence in that semester."  (Id.)  Plaintiff does not claim to have satisfied either of these requirements, and thus cannot contend that Kalb has failed to honor his promise to Plaintiff.

Kilson's alleged promise, as described by Plaintiff, is similarly conditional and does not constitute a clear and unambiguous promise that Kilson can be said to have failed to honor. Plaintiff contends that Kilson said that "Plaintiff would be able to register for two other courses at another university, *subject to the NYU's approval of the University*, to complete his degree requirements in lieu of addressing the grades dispute."  (Am. Compl. ¶ 179) (emphasis added). Plaintiff claims that Kilson and Plaintiff's counsel[4] subsequently discussed his attending various other universities in order to receive credit at NYU, but that NYU "found a problem" with each proposed university.  (Id. ¶ 96.)  However, NYU's doing so was not inconsistent with the terms of Kilson's alleged promise to Plaintiff.

Similarly, LaMorte allegedly promised on or about September 20, 2005 that *"upon*

---

[4] Plaintiff repeatedly references his counsel, although he is proceeding *pro se.*

*resolution of the intervening events, the NYU would address Plaintiff's academic matters*, and that the Plaintiff did not need to apply for a leave of absence or re-apply for admission." (Id. ¶ 176) (emphasis added). Plaintiff has defined the "intervening events" as the criminal and bankruptcy proceedings related to his fraudulent gifts to NYU. A promise that an issue will be addressed at future date is not a promise of a particular outcome. Given that the intervening events have been resolved, NYU has addressed Plaintiff's academic matters by advising him of the requirements for graduating and by declining to make any special exceptions to those requirements for his benefit. It has proven true, as LaMorte allegedly stated, that Plaintiff did not need to apply for a leave of absence in order for his academic matters to be addressed. Furthermore, NYU has not relied upon Plaintiff's decision not to seek a leave of absence in explaining why he has not earned a degree. Instead, as Plaintiff's exhibits demonstrate, Plaintiff has been informed that he did not graduate because of his failure to earn sufficient credits and complete the residency requirement. (See Pl.'s Ex. G) Thus, even if LaMorte's statement was a clear and unambiguous promise rather than an entirely contingent statement, Plaintiff did not rely on it to his detriment.

Plaintiff also alleges that Defendant Meloy promised that "NYU would preserve any and all documents relating to the Plaintiff." (Am. Compl. ¶ 178.) Plaintiff has not identified any respect in which he relied on this purported promise to his detriment. Plaintiff claims only that he "relied on the Defendants' promises by not transferring to another school, or pursuing other education opportunities, such as obtaining his degree via correspondence courses from another college or university." (Id. ¶ 181.) He has not shown how Defendants' non-retention of documents, even if true, would have impacted his decision to transfer.

25

Furthermore, with respect to all of the alleged promises, Plaintiff has failed to adequately allege reasonable or detrimental reliance. As has been noted, the promises were facially contingent and conditional, and therefore it was unreasonable to rely on them as if they were definite. To the extent that the alleged promises contradicted each other or contradicted the terms of the implied contract between the parties, as set forth in NYU's academic bulletin and other official publications, it was not reasonable for Plaintiff to rely on them. This was particularly so as time passed without those purported promises being fulfilled.

Finally, with respect to all of the alleged promises, Plaintiff has failed to allege an unconscionable injury. "Recovery under the doctrine of promissory estoppel is limited to cases where the promisee suffered unconscionable injury." Halliwell v. Gordon, 878 N.Y.S.2d 137, 139 (App. Div. 2009); see also Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996) (citing Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989)) (characterizing the necessary injury as "unconscionable"); Vioni v. Am. Capital Strategies Ltd., 2009 U.S. Dist. LEXIS 4664, 17-18 (S.D.N.Y. Jan. 23, 2009) (citing Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977)) (granting motion to dismiss promissory estoppel claim, noting that Plaintiff had failed to plead facts supporting an "unconscionable injury – which courts have continually held requires more than just a showing of economic harm."). An "unconscionable injury" is one "beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 826 (2d Cir. 1994).

Plaintiff claims that he has "repeatedly been lied to and taken advantage of" by NYU and its agents. (Am. Compl. ¶ 184) Plaintiff himself lied to and took advantage of NYU and many

others when he made a "gift" of over a million dollars in fraudulently obtained funds to the university. Promissory estoppel sounds at least partly in equity (see Merex, 29 F.3d at 825), and contrary to Plaintiff's contention, no "injustice would occur" (Am. Compl. ¶ 184) if NYU declines to make exceptions to its standard graduation requirements in order to permit Plaintiff to earn his degree. Plaintiff has failed to state a promissory estoppel claim because he has failed to demonstrate a clear and unambiguous promise, his reasonable and foreseeable reliance on that promise, or that he has suffered an injury, let alone an unconscionable one, as a result.

### E.    Tortious Interference with a Contract (Count Six)

In his motion to file a second amended complaint, Plaintiff sought to withdraw this Tortious Interference with a Contract claim and substitute for it a claim for Tortious Interference with a Prospective Business Relationship. As the motion to amend was denied, the Court will consider the Tortious Interference with a Contract claim on its merits.

Plaintiff claims that Defendants Kalb, Kilson, LaMorte and Meloy "intentionally and unjustifiably induced the NYU to breach its contract with the Plaintiff." (Am. Compl. ¶ 268.) Plaintiff bases his allegation on various communications Defendants had with him regarding his shortage of academic credits. (See id. ¶¶ 187-205.) However, the individual Defendants named in Count Six were all employees or agents of NYU. (Mem. Supp. Defs.' Mot. Dismiss First Am. Compl. at 32.) "An agent cannot be held liable for inducing his or her principal to breach a contract with a third person when the agent is acting on behalf of the principal within the scope of the agent's authority." Lutz v. Caracappa, 828 N.Y.S.2d 426, 427 (App. Div. 2006). "A properly pled complaint for tortious interference with contract under New York law must allege (1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had

27

knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages."
AIM Int'l Trading, LLC v. Valcucine S.P.A., IBI, LLC, No. 02 Civ. 1363(PKL), 2003 WL
21203503, at *4 (S.D.N.Y. May 22, 2003).

Plaintiff has failed to state a claim for tortious interference with a contract.  The contract
in question here is the implied contract between Plaintiff and NYU.  In order to maintain a claim
for tortious interference, there must be a third party to the contract.  Finley v. Giabcobbe, 79 F.3d
1285, 1295 (2d Cir. 1996).  "In order to show that a defendant-employee is a 'third party,' a
plaintiff must show that the defendant-employee has exceeded the bounds of his or her
authority."  Id.  Plaintiff has failed to allege that any individual Defendant acted outside his or her
authority as an employee and agent of NYU.  To the contrary, Plaintiff states that "all of the
above named individual Defendants were employees, agents, or subcontractors of Defendant
NYU, and were acting within the scope of their employment, agency, or contractual obligations."
(Am. Compl. ¶ 12)  Plaintiff's allegations rely only upon the individual Defendants'
communications with Plaintiff on behalf of NYU, which were consistent with their positions at
the university and which were made in the course of their employment there.  Thus, without
showing that a third party was involved or that defendant-employees were third parties by virtue
of having exceeded their authority, Plaintiff's tortious interference with a contract claim is
dismissed.

**F.    Breach of the Duty of Good Faith and Fair Dealing (Count Seven)**

Plaintiff asserts a breach of the duty of good faith and fair dealing, claiming that
Defendants made false and misleading statements to him in order to prevent him from receiving
the benefits of his implied contract with NYU.  (Am. Compl. ¶ 207.)  Defendants maintain that

28

under New York law, Plaintiff's claim for breach of the implied duty of good faith and fair dealing is redundant of his breach of contract claim and therefore should be dismissed. (Mem. Supp. Defs.' Mot. Dismiss First Am. Compl. at 25.)    There is no "separate cause of action for breach of the implied covenant of good faith and fair dealing when it is based on the same facts as a breach of contract claim." Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 319 (N.D.N.Y. 2007) (citing Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)). However, "a claimed breach of the implied covenant of good faith can survive a motion to dismiss if it is based on allegations different from those underlying the accompanying breach of contract claim." Id. (citing Goldblatt v. Englander Commc'ns, LLC, No. 06 Civ. 3208 (RWS), 2007 U.S. Dist. LEXIS 4278, at *14 (S.D.N.Y. Jan. 22, 2007). Nonetheless, this is a "very limited exception" and a claim for breach of the duty of good faith and fair dealing will be denied "where the relief sought is intrinsically tied to the damages resulting from the breach of contract." Id. (citing Alter v. Bogoricin, No. 97 Civ. 0662 (MBM), 1997 U.S. Dist. LEXIS 17369, at *20-21 (S.D.N.Y. Nov. 6, 1997)).

Plaintiff contends that his breach of the duty of good faith and fair dealing claim is not duplicative of the breach of contract claim because the facts are different, because the breach of contract claim does not include the individual defendants, and because the breach of good faith and fair dealing claim includes allegations of fraud. (Pl. Mem. Opp'n Defs.' Mot. Dismiss First Am. Compl. at 39.) In fact, however, Plaintiff relies on identical communications between Plaintiff and Defendants to support both claims. In support of his breach of contract claim, Plaintiff claims that Defendants sent Plaintiff and his family "on a wild goose chase or provided false and misleading assurances for the sole purpose of hindering the Plaintiff's ability to receive

the benefits due to him under the NYU agreement." (Am. Compl. ¶ 161; see also ¶ 174 (NYU

"played a game of ping pong and created a circular situation by repeatedly providing false and

misleading statements to the Plaintiff, and his agents.")) Plaintiff bases his claim for breach of

the duty of good faith and fair dealing upon the functionally identical claim that Defendants used

these same "false and misleading statements" to "impede the Plaintiff's rights to receive benefits

that he reasonably expected to receive under the NYU agreement." (Id. ¶ 207.) Plaintiff has not

provided distinctive grounds for each claim. Accordingly, Plaintiff's breach of the implied duty

of good faith and fair dealing claim is dismissed.

## G.    Quantum Meruit/Unjust Enrichment (Count Eight)

Plaintiff claims that NYU was unjustly enriched as a result of Plaintiff's failing to receive

a degree notwithstanding his payments of over $150,000 to NYU for tuition, books, and other

school materials. (Am. Compl. ¶¶ 215-19, 278-83.) Plaintiff further contends that NYU was

unjustly enriched by the $200,000 that NYU retained to cover the expenses it occurred in

connection with Plaintiff's purported gift to the university of fraudulently-obtained funds. Id.

Plaintiff contends that NYU's actual expenses associated with the gift were substantially less,

because NYU "planned on building a lecture hall irregardless." (Am. Compl. ¶ 218) Defendants

respond that there can be no unjust enrichment where parties have a contractual relationship, and

that Plaintiff and NYU agreed, and the bankruptcy judge approved, that NYU would be entitled

to retain a certain amount of the Plaintiff's purported gift. (Defs.' Mot. Dismiss First Am.

Compl. at 26.)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1)

that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good

30

conscience' require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).  Further,

"[t]he 'essence' of such a claim 'is that one party has received money or a benefit at the expense

of another.'" Id. (quoting City of Syracuse v. R.A.C. Holding, Inc., 685 N.Y.S.2d 381, 381 (App.

Div. 1999)).  A claim for unjust enrichment "lies as a quasi-contract claim. It is an obligation the

law creates in the absence of any agreement."  Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742,

746 (N.Y. 2005).

Plaintiff has failed to state a claim for unjust enrichment.  Plaintiff claims NYU was

unjustly enriched because Plaintiff paid NYU tuition but did not receive a degree.  (Am. Compl.

¶¶ 215-19, 278-83.)  However, as Plaintiff acknowledges, he and NYU had an implied contract.

(See, e.g., id. ¶¶ 164, 167.)  This implied contract was governed by the university's bulletins and

regulations.  See Vought, 127 A.D.2d at 654-55 ("The rights and obligations of the parties as

contained in the university's bulletins, circulars and regulations made available to the student,

become a part of this contract.").  Because Plaintiff and NYU had a contract, he cannot bring an

action for unjust enrichment.  See Goldman, 841 N.E.2d at 746 (finding no valid claim for unjust

enrichment when the matter was controlled by contract).  Furthermore, universities need not

return the tuition payments of students who fail to complete the requirements for their degrees.

Plaintiff received the educational benefit of his tuition payments when he took classes at NYU

during his five years there, and NYU was not unjustly enriched by virtue of Plaintiff's failure to

earn a degree.  Furthermore, it is clear that "equity and good conscience" do not require

restitution in this situation.  See Kaye, 202 F.3d at 616.

Plaintiff also fails to state a claim of unjust enrichment in relation to NYU's retention of

$200,000 from Plaintiff's purported gift to the university.  The Stipulated Order Regarding

Turnover of Funds approved by the Bankruptcy Court on April 17, 2007 states that NYU

"provided to the Trustee adequate evidence that the University has incurred $199,092.62 in costs

and disbursements relating to the September 29 transfer." (Pl.'s Ex. L, ¶ N.) Further, the Order

provides that NYU was "released and discharged from any and all claims and liabilities, of any

kind or nature that any natural or legal person or other entity . . . has, had or may hereafter have,

from the beginning of the world to the date of entry of this Order, arising from or in any way

relating to the Gift Agreements." (Id. ¶ 7.) Accordingly, NYU retained the approximately

$200,000 pursuant to a binding agreement between the parties, which was approved by a judge,

and therefore NYU cannot be held liable for unjust enrichment. Plaintiff's claim for unjust

enrichment is dismissed.

## H.    Common Law Fraud (Count Nine)

Plaintiff brings a common law fraud claim against Defendants NYU, Kalb, LaMorte,

Kilson, and Meloy. Plaintiff claims that Defendants knowingly made fraudulent

misrepresentations and omissions of material facts between the summer of 2005 and April 2008

with the actual intent that the Plaintiff rely upon them, which he did to his loss and detriment.

(Am. Compl. ¶¶ 285-87.) "To prevail on a fraud claim under New York law, a plaintiff must

establish five elements by clear and convincing evidence: 1) the defendant made a material

misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to

defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered

damage as a result of the misrepresentation." Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir.

2000). Plaintiff alleges that LaMorte represented to Plaintiff in 2005 that he need not apply for a

leave of absence and that his grades would be "corrected" upon resolution of the criminal matters

against Plaintiff.  (Am. Compl. ¶ 220)  Plaintiff contends that NYU, Kilson, and their agents "represented that only upon resolution of the NYU Bankruptcy Action and the criminal matters would the NYU either correct the grade dispute, award the Plaintiff his degree, or in the alternative, allow the Plaintiff to take the two other courses to satisfy the NYU degree requirements and award the Plaintiff his degree."  (Id. ¶ 222)  Finally, Plaintiff cites as fraudulent Dean Kalb's May 4, 2006 letter stating that Plaintiff "will be awarded the Bachelor of Arts degree in the College of Arts and Science at New York University."  (Id. ¶ 221)

Pursuant to Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiff has not identified any allegedly fraudulent statements made by Defendant Meloy, and therefore the fraud claim against her is dismissed.  The allegations of fraud with respect to some of the other Defendants are also rather vague.  The only one that identifies a specific statement made on a particular date is the allegation that Dean Kalb represented to Plaintiff that he would be awarded a degree, but, as has been discussed numerous times, the letter made clear that Plaintiff would be awarded a degree only "once you have satisfied all of these requirements," including earning eight additional credits and satisfying the residency requirement.  (Pl.'s Ex. G)  Therefore, Kalb's letter did not constitute a misrepresentation and cannot give rise to a fraud claim against him.

With respect to the remainder of the fraud allegations, it is highly implausible that Defendants would have promised Plaintiff that they would "correct" his grades or make special accommodations to facilitate Plaintiff's earning the remaining two credits.  As defendants point out, by the summer of 2005, "the fraud in which Yalincak had been engaged, including his fraudulent 'gift' to the University, had come to light.  Once that occurred, no one connected with

33

the University had any incentive to give Yalincak any special dispensation or excuse him from

complying with established University policies." (Def.'s Mot. Dismiss First Am. Compl. at 33.)

Even assuming that Defendants made such representations, Plaintiff has not adequately alleged

that his reliance upon them was reasonable in light of the fact that the alleged representations

clearly contravened NYU's published procedures regarding, for example, the process for

challenging a grade or the requirements for graduation.  Plaintiff's fraud claims are dismissed.

**I.      Violations of N.Y.G.B.L. § 349 (Count Ten)**

Plaintiff asserts that Defendant NYU has engaged in "deceptive acts which were directed

at consumers such as Plaintiff."  (Am. Compl. ¶ 290.)  Plaintiff further contends that NYU has

acted "contrary to its public advertisements included in brochures, pamphlets, and its own

college bulletin" and that NYU has thereby violated "its contractual 'policy of equal treatment

and opportunity in every aspect of its relations with its faculty, students and staff members.'" (Id.

¶ 291, citing Pl.'s Ex. A at A1-7).  The language that Plaintiff selectively quotes is a part of

NYU's nondiscrimination policy, which goes on in the remainder of that sentence to specify

numerous classifications, such as age, race, gender and so forth, based upon which the university

commits itself not to discriminate.  (Pl.'s Ex. A at A1-7.)  Plaintiff does not identify the lack of

equal treatment of which he complains as deriving from his membership in any of these protected

classifications.

Instead, Plaintiff contends that, in its lack of equal treatment of him, NYU has violated

Section 349 of the New York General Business Law, which declares as unlawful "[d]eceptive

acts or practices in the conduct of any business, trade or commerce or in the furnishing of any

service in this state."  N.Y. Gen. Bus. L. § 349.  "To state a claim for deceptive practices under

34

Section 349, a plaintiff must show: (1) that the act or practice was consumer-oriented; (2) that the act or practice was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice or act." In re Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006) (citations omitted). "[I]n order to invoke Section 349, Plaintiffs must, as a threshold matter, 'charge conduct that is consumer oriented.'" Id. (quoting New York Univ. v. Cont'l Ins. Co., 87 N.Y. 2d 308, 320, 662 N.E.2d 763, 639 N.Y.S. 2d 283 (1995)). "Moreover, Plaintiffs must allege facts sufficient to show that the challenged conduct has a 'broader impact on consumers at large,' i.e., it 'potentially affects similarly situated consumers' in New York." Id. (quoting S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996)).

Rather than complaining of consumer-oriented conduct that "potentially affects similarly situated consumers," Id., Plaintiff instead contends that he personally has been "targeted" by NYU (Am. Compl. ¶ 210) and "treated differently than similarly situated individuals." (Id. ¶ 211.) "Section 349 does not apply to a breach of a private contract affecting no one but the parties to the contract, because that conduct 'is not an act or practice affecting the public interest.'" GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel, 381 F. Supp. 2d 267, 282 (S.D.N.Y. 2005) (quoting Asbeka Industries v. Travelers Indem. Co., 831 F. Supp. 74, 88 (E.D.N.Y 1993)). Therefore, Plaintiff's Section 349 is dismissed for failure to state a claim.

**J.    Violations of the Connecticut Unfair Trade Practices Act (Count Eleven)**

Plaintiff asserted a claim against NYU for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, as an alternative to his claim pursuant to N.Y.G.B.L. § 349. Because New York law applies to the present action, it is unnecessary to address Plaintiff's CUTPA claim. Accordingly, this claim is dismissed.

35

**VI.    Other Motions**

_____Having dismissed all counts of Plaintiff's First Amended Complaint, the Court denies as moot Defendants' alternative motions that any remaining claims be dismissed for lack of venue or transferred to the United States District Court for the Southern District of New York pursuant to Rule 12(b)(3), or that the First Amended Complaint be stricken pursuant to Rule 12(f) for Plaintiff's failure to comply with the scheduling order.

**VII.    Conclusion**

For the reasons stated herein, Defendants' Motion to Dismiss [Doc. No. 36] is GRANTED.  Plaintiff's Motions to Amend the Complaint for a second time [Doc. Nos. 44 & 53] are DENIED.  The Clerk shall close the case.

SO ORDERED.

Dated at New Haven, Connecticut, September 2, 2009.

/s/_____
Peter C. Dorsey, U.S.D.J.